UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

ARIEL NICOLE CUNNINGHAM,

    Movant,

v.                                            Civil No. 6:23-cv-029-P
                                                (Crim No. 6:21-cr-058-P(14))

UNITED STATES OF AMERICA,

    Respondent.

**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 and,
ORDER DENYING CERTIFICATE OF APPEALABILITY**

    Before the Court is Defendant/Movant Ariel Nicole Cunningham ("Cunningham")'s motion for relief under 28 U.S.C. § 2255 and supporting brief. Mot. Vacate 1-11, ECF No. 1; Brief 1-17, ECF No. 3. The government filed a response with a CD Exhibit. ECF No. 10, 11. Cunningham did not file any reply. After considering the § 2255 motion and supporting brief, the response, record, and applicable law, the Court **DENIES** the § 2255 motion to vacate.

## BACKGROUND

### A.    Offense Conduct

    Cunningham obtained more than a kilogram of nearly 100%-pure methamphetamine from her co-conspirator over the course of several months. Presentence Report ("PSR") ¶¶ 16-17, CR ECF No. 397-1.[1] A

---

[1] "ECF No. __" refers to the docket numbers to documents filed in this civil case number assigned to the § 2255 motion. No. 6:23-CV-029-P. "CR ECF No. __" refers to the docket numbers of documents filed in the underlying criminal proceeding, *United States v. Cunningham*, 6:21-CR-058-P-14 (N.D. Tex.).

1

subsequent investigation into her drug trafficking uncovered inculpatory messages sent via Facebook Messenger. PSR at ¶ 23. Specifically, those messages show Cunningham telling her source of supply that she "make[s] more [money] wen (sic) [she] break[s] it down," an apparent reference to drug trafficking. *Id.* Cunningham further encouraged her source of supply to "get Savage w these hoes (sic)." *Id.* Cunningham's messages also showed her arranging to buy numerous "zips"—i.e., ounces of methamphetamine from her supplier. *Id.* As the Court explained at sentencing, those messages were "pretty damning." Sentencing Tr. 14, CR ECF No. 604 ("The Court: Because I will tell you that text messages and Facebook messages in the presentence report are pretty damning.").) In addition to Cunningham's incriminating messages, officers obtained statements from at least four of Cunningham's co-conspirators confirming that she bought methamphetamine from a particular source of supply for distribution. PSR at ¶ 17 (Nichols); PSR at ¶ 18 (Gomez); PSR at ¶ 20 (Thomas); and PSR at ¶ 21 (Friar, Cunningham's source of supply).)

### B. Interview with Officers

On January 28, 2020, Cunningham was arrested on unrelated outstanding warrants. PSR Addendum 2, CR ECF No. 497-1; *see also* Objections (Arrest Report Exhibit) 7, CR ECF No. 466. On February 18, 2020, drug investigators interviewed Cunningham while she was still in custody. PSR at ¶ 19, CR ECF No. 397-1; Response (Exhibit 1-Ariel Cunningham Interview) 1, ECF No. 11.[2] Before the interview began, investigators advised Cunningham of her rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Ex. 1 at 2:10, ECF No. 11. Cunningham stated that she already knew those rights and proceeded to talk to the

---

[2] Response "Exhibit 1" is a CD containing an audio recording of that interview. The government provided a copy to the Court with the response and it was placed on the docket of this civil case. ECF No. 11.

investigators for more than hour, admitting some aspects of her criminal conduct while minimizing others. *See id.* at 2:10 *et seq*.

### C.     Charge, Guilty Plea, and Sentencing

Cunningham was later charged with one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. § 846. Indictment 1-2, CR ECF No. 4. Cunningham filed a factual resume admitting that she conspired with other codefendants to possess and distribute at least 50 grams of actual methamphetamine. Factual Resume 1-4, CR ECF No. 278. At her rearraignment hearing, Cunningham testified that she: (1) understood the charge against her (Rearraignment Tr. 8-10, CR ECF No. 756); (2) had reviewed the single-count indictment with her counsel (*id.*); (3) was guilty of that offense (*id.* at 15); and (4) admitted that the facts set out in her factual resume were true and correct (*id.* at 10). She also testified that she was fully satisfied with her attorney's representation regarding his advice to enter a guilty plea, and further, that no one had tried to force her to plead guilty. *Id.* at 16–17.

After her guilty plea, the Probation Department prepared the presentence report. The PSR determined that Cunningham was accountable for 1,729.35 grams (1.7 kilograms) of methamphetamine (actual) and thus, under the Drug Quantity Table U.S.S.G. § 2D1.1(c)(2), recommended a base offense level of 36. PSR ¶ 31, CR ECF No. 397-1. With a total three-level reduction under both U.S.S. §§ 3E1.1(a) and (b) for acceptance of responsibility, Cunningham's total offense level was 33. PSR ¶¶ 31-40. Combined with her criminal history category of V, Cunningham's advisory guideline range was 210 to 262 months' imprisonment. PSR at ¶ 86.

Before sentencing, Cunningham's counsel filed a motion for downward variance. Mot. For Below Guideline Sentence 1-6, CR ECF No. 524. At sentencing, the Court granted that motion and sentenced Cunningham to a "significant variance" to 135 months' imprisonment. Sentencing Tr. 20-21, CR ECF No. 604. Cunningham did not file a direct

3

appeal. She timely filed her § 2255 motion and supporting brief on May 16, 2023. Mot. Vacate 1, ECF No. 1; Brief 1, ECF No. 3.

## GROUNDS FOR RELIEF

Ariel Nicole Cunningham raises three grounds claiming that her counsel provided ineffective assistance. She alleges that her counsel was ineffective for failing to: (1) seek a role-reduction under the Sentencing Guidelines; (2) move to suppress her confession; and (3) investigate alleged defenses. Mot. Vacate 7, ECF No. 1; Brief 8-15, ECF No. 3.

## LEGAL STANDARD

### A.  Standard of Review of a § 2255 motion

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence on four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" 28 U.S.C. § 2255(a); *see United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citation omitted).

"It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). "Section 2255 does not offer recourse to all who suffer trial errors." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). It may also "not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). After conviction and the exhaustion or waiver of all appeals, the Court is "entitled to presume" that the prisoner "stands fairly and finally convicted." *Id.* at 164.

### B.  Law Applicable to Review of Ineffective-Assistance Claims under § 2255

Ineffective-assistance-of-counsel ("IAC") claims can be raised under § 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To establish IAC, "[F]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This two-part test applies to IAC claims arising from guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

To show deficient conduct under *Strickland*, the burden is on the defendant to show that her counsel's representation fell below an objective standard of reasonableness, by identifying acts or omissions of counsel "that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A district court then determines whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* There is a strong presumption that the performance of counsel falls within this range. *United States v. Samuels*, 59 F.3d 526, 529 (5th Cir. 1995). Defendant cannot overcome this presumption with after-the-fact accusations that lack supporting evidence. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (noting that although pro se § 2255 motions are construed liberally, even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue"); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value."). If counsel provides objectively unreasonable representation during the plea process, the defendant must prove prejudice by showing "that there is a reasonable probability that, but for counsel's errors, he

5

would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

To prove prejudice generally, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This showing "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Failure to meet either the deficient-performance or prejudice prongs will defeat a claim of ineffective-assistance. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000). The reviewing court need not address both components if there is an insufficient showing on one. *Id.*

## ANALYSIS

### A. Ground One - Failure to Seek Minor Role Sentence

In her first ground for relief, Cunningham asserts that her counsel was ineffective when he failed to seek a minor-role sentencing adjustment. Brief 8-11, ECF No. 3. This claim fails because (1) it is conclusory, (2) counsel is not required to make frivolous arguments, and (3) Cunningham has failed to allege—let alone prove—prejudice.

U.S.S.G. § 3B1.2(b) provides that a district court should decrease a defendant's offense level by two if she was a minor participant in the criminal activity. U.S.S.G. § 3B1.2(b). A defendant seeking such a role adjustment bears the burden of proving by a preponderance of the evidence that the adjustment is warranted. *United States v. Castro*, 843 F.3d 608, 612 (5th Cir. 2016). But where a defendant fails to "show the level of culpability of the average participant in the offense, establish [her] own relative level of culpability, or otherwise demonstrate that [she] did so much less than other participants that [she] was peripheral to the criminal activity's advancement," she is not entitled to a

6

reduction. *United States v. Palacios-Villalon*, 802 F. App'x 868, 869-70 (5th Cir. 2020) (citing *Castro*, 843 F.3d at 613-14)).

   Here, Cunningham fails to provide any evidence that her counsel could have used to show that she was entitled to a minor-role reduction. She does not allege which codefendants constituted an average participant nor does she attempt to show how her conduct was substantially less culpable than that of the others. Rather than substantiate her allegation, Cunningham claims in conclusory fashion that her counsel was necessarily deficient. Brief 8-11, ECF No. 3.

   Review of this claim shows that it is without merit. At sentencing, this Court inquired about where Cunningham "rank[ed]" among her co-conspirators, and the government explained that Cunningham was similarly situated to other "distributors for the organization," and told the Court "they would "all rank together." Sentencing Tr. 13-14, CR ECF No. 604. As that record and the PSR establish, Cunningham was, at minimum, an average participant in the drug-trafficking organization and she cannot show that her counsel rendered deficient performance for failing to argue for a minor-role reduction.

   Cunningham has also failed to properly allege prejudice—and no prejudice is apparent from the record. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (explaining that conclusory allegations of prejudice are insufficient to raise a constitutional issue). She cannot show a reasonable probability that, had her counsel argued for a minor-role adjustment, the Court would have granted it for the reasons explained above. And even if the Court had reduced her offense level by two levels—to a new total of 31—her resulting guideline range would still be 168 to 210 months' imprisonment, well above the sentence the Court ultimately imposed. Thus, Cunningham can show no probability that even a lower guideline range would have resulted in a shorter sentence.

   Thus, Cunningham's first ground for relief must be denied.

   **B.**  **Ground Two - Failure to Move to Suppress**

In her second ground for relief, Cunningham claims that her counsel should have sought to suppress her admissions as "illegally obtained by detectives for failing to marandise (sic)." Brief 12, ECF No. 3. This ground must be denied for multiple reasons.

### 1. Waiver

First, Cunningham's claim is waived. "'[O]nce a guilty plea has been entered, all nonjurisdictional defects in the proceedings against a defendant are waived,' and the waiver 'includes all claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea.'" *United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008) (quoting *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983)). As the Fifth Circuit explained in *Cavitt*, this waiver includes claims that counsel should have sought suppression before the plea was entered. 550 F.3d at 441. While there is an exception to the rule where the failure to seek suppression rendered the guilty plea involuntary, *see Cavitt*, 550 F.3d at 441, Cunningham makes no such argument. Thus, the Court rejects Cunningham's claim as waived. *See, e.g., Alexander v. United States*, Nos. 3:13-CV-4728-D & 3:10-CR-306-D-1, 2015 WL 4557165, at *9 (N.D. Tex. July 28, 2015) (finding that the movant waived his Fourth Amendment claims when he pleaded guilty).

### 2. No Deficiency

Also, Cunningham's claim that she was never advised of her rights to be the subject of a suppression motion is demonstrably false. Brief 12, ECF No. 3. The audio recording of her custodial interview makes clear that she was so advised; she then waived her rights and voluntarily chose to speak to the officers. Response Resp, Exhibit 1-Ariel Cunningham Interview, 2:10, ECF No. 11. Her counsel was not ineffective for failing to file a frivolous motion to suppress based on Cunningham's misrepresentations.

### 3. No Prejudice

Moreover, Cunningham's claim counsel should have filed a motion to suppress fails because she does not allege prejudice. Where, as here, the movant argues that her counsel was ineffective at the pre-plea stage, she must show a reasonable probability that, but for counsel's deficient performance, she would have insisted on a trial. *Hill*, 474 U.S. at 59; *see also United States v. Risovi*, 826 F. App'x 369, 373-74 (5th Cir. 2020). Nowhere does Cunningham allege that she would have demanded a trial, "and without an allegation of prejudice, an ineffective-assistance claim cannot succeed." *Risovi*, 826 F. App'x at 374.

Cunningham's motion does discuss the strength of the remaining evidence against her, and she alleges that without her confession "she would not have been rightly convicted . . . . " Brief 12, ECF No.3  To the extent this discussion is an implicit allegation that Cunningham would have demanded a trial had her confession been suppressed, the Court still finds that she has not shown prejudice.

The Fifth Circuit has reiterated that "courts should not upset a plea solely because of post hoc assertions from a defendant about how [s]he would have pleaded but for [her] attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *United States v. Valdez*, 973 F.3d 396, 403 (5th Cir. 2020) (internal citation and quotation marks omitted). This inquiry "focuses on [Cunningham's] decision making" during the plea process. *Lee v. United States*, 582 U.S. 357, 367-68 (2017). A defendant's statements at her plea colloquy, wherein she confirms her understanding of her plea's consequences, "serve as evidence relevant to understanding [her] decision-making at the time." *Valdez*, 973 F.3d at 405-06. Moreover, "factors relevant to determining whether a defendant would have gone to trial can also include the risks [s]he would have faced at trial, [her] representations about [her] desire to retract [her] plea, and the district court's admonishments." *Id.* at 403 (citation omitted).

Applying these principles, the Court rejects Cunningham's claims that she would have insisted on a trial but for counsel's failure to file a

9

suppression motion. Critically, Cunningham has pointed to no contemporaneous evidence supporting the theory that she wanted a trial. Instead, all the evidence available shows that she did not.

In this regard, the government's evidence against Cunningham was strong. Even before investigators interviewed her, they had obtained copies of her Facebook Messenger messages, in which she discussed selling "zips," encouraged her supplier to be ruthless, arranged additional purchases, and explained that she made more money when she broke the drugs down. PSR at ¶ 23, CR ECF No. 397-1. In addition, as noted above, four different coconspirators—including Cunningham's own supplier—implicated her in the conspiracy. PSR at ¶¶ 17-18, 20-21. Cunningham's claim that there was no evidence beyond her confession simply ignores this evidence of her guilt. Brief 12, ECF No. 3.

Also, Cunningham's own pleading suggests that she discussed suppression with her counsel and instead opted to plead guilty. Brief 12, ECF 3 (noting that her attorney "agreed that he could put in a motion to suppress," but later advised her "it would be best to plead guilty to avoid a 30 year sentence"). But Cunningham never moved to withdraw her guilty plea. And at sentencing, Cunningham fully admitted her guilt. Reading from a written statement, Cunningham admitted that "at the time of this conspiracy [her] attitude towards everything was careless." Sentencing Tr. 15-16, CR ECF No. 604. She also admitted that she had to "own up for what [she] did and suffer the consequences." *Id.* at 16-17. This testimony suggests that Cunningham strategically chose to plead guilty rather than file a frivolous suppression motion based on an allegation about not being advised of her rights. Thus, the contemporaneous evidence conclusively disproves any suggestion that Cunningham would have opted for a trial had her counsel filed a suppression motion. She has not shown prejudice under *Hill*.

Cunningham's second ground for relief must be denied.

    **C.**    **Ground Three- Failure to Investigate**

10

In her third ground for relief, Cunningham claims that her counsel was ineffective because he failed to investigate her claimed involuntary confession and failed to interview unnamed witnesses. Brief 13-15, ECF No. 3. These claims are waived, conclusory, and without merit.

As noted, by pleading guilty, Cunningham waived her claims of pre-plea ineffective assistance. And because Cunningham does not allege that she would have insisted on a trial but for counsel's purportedly deficient performance, these claims are waived. *Cavitt*, 550 F.3d at 441; *United States v. Palacios*, 928 F.3d 450, 456-57 (5th Cir. 2019). Relatedly, Cunningham's failure to allege prejudice—that is, that but for counsel's purportedly deficient performance she would have demanded a trial—is also fatal to her claim for relief. *See United States v. Batamula*, 823 F.3d 237, 240 (5th Cir. 2016) (en banc) ("To avoid summary dismissal and obtain a hearing, however, Batamula had to allege a non-frivolous prejudice claim."); *Risovi*, 826 F. App'x at 374.

Moreover, it is well settled that "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of the case. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citation omitted). Also fatal to her claim is Cunningham's failure to explain what evidence an additional investigation would have uncovered and how that evidence would have changed the outcome.

Instead, Cunningham claims that counsel failed to find "potential witnesses" who would "contradict evidence . . . that she had received drugs every day for two months." Brief 15, ECF No. 3. But "complaints of uncalled witnesses are not favored" in post-conviction proceedings because allegations of what a witness would say "are largely speculative[.]" *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citation omitted). This is especially so "if the claim is unsupported by evidence indicating the witness's willingness to testify and the

11

substance of the proposed testimony." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (citation omitted). "To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable." *Id.* (citation omitted).

In order to succeed on her claim, Cunningham was required to submit competent evidence—affidavits, for example—showing that the uncalled witnesses were available and that their testimony would have been truly exculpatory. *Id.* at 353. Her failure to even name such a witness, let alone provide an affidavit outlining the substance of their exculpatory testimony, is fatal to her claim for relief. It thus fails as a matter of law. *Id.* at 352.

Cunningham also contends that her lawyer was deficient for failing to investigate her allegation that she was forced against her will to meet with investigators and confess because, weeks earlier, the "Jail Chief" had "pushed [her]. . . into mop buckets" and told her that it would be in her best interest to speak to investigators. Brief 13, ECF No. 3. Review of the recording of the interview shows there is no merit to this claim. At no point of her interview did Cunningham suggest that she agreed to give the statements because she feared jail staff. *See* Resp. Exhibit 1-Ariel Nicole Cunninghan Interview at 2:10 through 1:10:25, ECF No. 11. The recording of her interview shows that she initiated the contact with officers by asking to speak with them to check whether her "best friend" was okay, and she, understanding her rights, volunteered numerous incriminating statements. *See, e.g.*, Ex. 1 at 0:15 (indicating that Cunningham asked to speak with investigators); *id.* at 2:09 (Cunningham stating "I already know those rights," referring to her rights under *Miranda*); *id.* at 4:50 (Cunningham indicating that she knows officers have incriminating pictures and evidence against her); and *id.* at 16:45 (Cunningham claiming that she is just "a sack chaser"). Indeed, at times during her interview, Cunningham declined to answer

12

certain questions out of fear of incriminating herself further. *See, e.g.*, Ex. 1 at 17:49-53 (Cunningham refusing to answer the officer's question about how much "dope" she received); *id.* at 26:18-26: (Cunningham claiming that she was not minimizing but would not "put a lot of shit out there *because don't want to*"); *id.* at 29:30, 31:30 and 39:46 (Cunningham denying that she "sold dope").)

Although Cunningham complained to investigators about her treatment at the jail, she did so long into the interview, after she had made a series of incriminating statements. *Id.* at 1:05:00, and 1:09:15-30.[3] Nothing in the recording corroborates her account that her confession was coerced because she "felt she had no other option but to speak to detectives." Brief 14, ECF No. 3. Cunningham's attempts to minimize her role, deny drug trafficking, and decline to say how much methamphetamine she actually bought or sold, undermines her belated claim that she felt forced to confess. Thus, the recording belies Cunningham's allegations of an involuntary confession. And, even assuming there was an arguable basis for suppressing Cunningham's confession, as analyzed above, she has wholly failed to show a reasonable probability that she would have insisted on a trial. Accordingly, Cunningham has not shown prejudice on her final ground for relief.

In sum, Cunningham's ground three claiming a failure to investigate, must be denied.

\* \* \*

For all of these reasons, Cunningham's motion for relief under 28 U.S.C. § 2255 is denied.

## CERTIFICATE OF APPEALABILITY

---

[3] In response, the investigators encouraged Cunningham to contact any appointed lawyer and jail staff to report any mistreatment. (Ex. 1 at 1:05:40-1:06:10.)

13

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. FED. R. APP. P. 22(b). Rule 11 of the Rules Governing Section 2255 Proceedings now requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing Section 2255 Proceedings in the United States District Courts, Rule 11(a) (December 1, 2009). This Court may only issue a COA if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by showing "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The Court concludes that Ariel Nicole Cunningham has not made a showing that reasonable jurists would question this Court's rulings and **DENIES** a certificate of appealability for the reasons stated in this order.

## CONCLUSION

It is therefore **ORDERED** that Ariel Nicole Cunningham's motion to vacate under § 2255 (ECF No. 1) is **DENIED**. It is further **ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED** this **5th day** of **December 2023**.

Mark T. Pittman
UNITED STATES DISTRICT JUDGE